# BRADY *v.* FARLEY

[No. 161, October Term, 1948.]

*Decided May 20, 1949.*

Before MARBURY, C. J., DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

Submitted on brief by *Walter B. Siwinski* for the appellant.

Submitted on brief by *John A. Farley, Jr.*, for the appellee.

GRASON, J., delivered the opinion of the Court.

The court adopts the opinion of the Chancellor below:

"This is a suit for the specific performance of a contract for the sale of the leasehold interest in the prop-

erty known as 700 Manchester Road, Kensington, Baltimore County. The defendant refused to take title on the ground that the title is unmarketable in that it is a part of a lot marked 'proposed swimming pool' on the recorded plat of Kensington. The facts are fully and accurately stated in the memorandum on behalf of the complainant.

It is clear that the swimming pool was merely something contemplated in the early stages of the development. It was a mere hope and expectation—as stated in the memorandum 'a prospective rather than a present intention to restrict the use of the land and to build the "proposed swimming pool"'.

The 'proposed swimming pool' lot in 1926 was about half covered by an old mill or ice pond, fed by an open stream. Since then it had been continually used for dumping debris until it was filled up. Nothing was ever done or started to make it suitable as a swimming pool location. In 1938 the Kensington Realty Corporation erected thereon a large building shed. This shed has been partly torn down by the plaintiff in order to erect houses on the lot.

Three valuable detached brick dwellings have been erected on the proposed swimming pool lot. None of the purchasers of lots in the development has ever objected to the filling up of the lot or the erection of the dwellings. On the contrary, many of the owners in the development have expressed gratification that the lot had been improved. Apparently, it was an eyesore and somewhat of a nuisance.

There was no clear, present intention to dedicate or restrict the use of the lot of ground in question. The word 'proposed' on the plat and the oral restrictions made to the early purchasers of lots in the Kensington tract merely indicated a prospective or possible intention to restrict the use of the lot to a swimming pool. The whole idea of the swimming pool appears to have been a nebulous, impractical, tentative proposition,—the impractical dream of an optimistic real estate developer.

In the case of the *City of Brownsville v. West et al.*, Tex. Civ. App., 1941, 149 S. W. 2d 1034, 1038, quoted in the complainant's brief, is apparently on all fours with the case at bar. In that case there was a plat with a parcel of land marked 'proposed park.' The plat was recorded and many lots sold with reference to it, but no attempt was made to use the lot as a park. The Court held that:

'* * * the words, 'Proposed Park' were used, instead of just the word 'Park.' This indicates that the intention to dedicate a park was prospective rather than present.'

In the recent case of *Norris v. Williams,* 189 Md. 73, 76, 54 A. 2d 331, 332, Judge Delaplaine, speaking for the Court, said:

'However, restrictions upon the use of land are in derogation of the natural right which an owner possesses to use and enjoy his property, and are repugnant to trade and commerce. Consequently, restrictive covenants are construed strictly against their establishment and effect, and liberally in support of the unrestricted use of the land. *Himmel v. Hendler,* 161 Md. 181, 155 A. 316; *Ferguson v. Beth-Mary Steel Corporation,* 166 Md. 666, 172 A. 238; *Baltimore Butchers, Abbatoir & Live Stock Co. v. Union Rendering Co.,* 179 Md. 117, 17 A. 2d 130; *Yorkway Apartments v. Dundalk Co.,* 180 Md. 647, 26 A. 2d 398; *Matthews v. Kernewood, Inc.,* 184 Md. 297, 305, 40 A. 2d 522; *Scholtes v. Mc-Colgan,* 184 Md. 480, 490, 41 A. 2d 479.'

In the case of *Scholtes v. McColgan,* 184 Md. 480, 41 A. 2d 479, 484, the Court said:

'There must be borne in mind the often repeated doctrine that doubts should be resolved in favor of the unrestricted use of property.'

There is no question but there was no public dedication of the lot of ground in question. A dedication as was held in the case of *Mayor and City Council of Baltimore v. Gordon,* 133 Md. 150, 153, 104 A. 536, 537, must be to the public at large. The Court held in that case:

'There is no such thing as a dedication between the owner and individuals, the public must be a party to every dedication. It is the essence of a dedication to public uses, that it shall be for the use of the public at large.'

The complainant contends that there were no covenants passing to the grantees who purchased in Kensington restricting the land in question to use as a swimming pool. It is pointed out that no sales were made contiguous to, or even opposite, the lot in question at the time when the plat was shown to the purchasers in the early stages of the development. There was no reference made to the proposed swimming pool lot in any of the conveyances to purchasers of lots in the development. The authorities in this state sustain this proposition.

*Stover v. Steffey*, 115 Md. 524, 81 A. 33, 37 L. R. A., N. S., 856, is very similar to the case at bar. The Court in the *Stover* case reviewed and reaffirmed the principle of dedication laid down in *Hawley v. Mayor, etc., of Baltimore*, 33 Md. 270; *Canton Co. v. City of Baltimore*, 106 Md. 69, at page 83, 66 A. 679, 67 A. 274, 11 L. R. A., N. S. 129. The Court held that where the owner of a tract of land laid it off as a park, with a portion of the tract laid out in streets and lots, a plat of which was placed in the Plat Record in the Clerk's office of the county although not marked filed, the purchaser of a lot not contiguous to but at a distance from the part of the land described on the plat as a park, and in whose deed there were no direct or implied covenants limiting the use of the 'park', had no right to enjoin the purchaser within the area named as a park from erecting a house or other building thereon.

The Court does not consider that any rights were ever created in favor of the original purchasers but if there were any such rights created, the orginal purchasers were negligent in failing to establish such rights within a reasonable time. They would be barred by laches from asserting any rights at this time.

After standing by without protest for years, seeing the lot filled in, the shed constructed upon it, the shed

then partly torn down and three dwellings erected upon the lot at a cost of approximately $35,000, the purchasers of those early lots in Kensington would not be permitted to come in and assert that this lot should be reserved for a swimming pool.

It would be against all practical considerations and common sense to hold that a lot such as this should permanently remain an unused, abandoned eyesore of weeds and trash,—a menace to the health of the community and of no value to anyone."

For the reasons expressed above, the decree appealed from is affirmed, with costs to appellee.

*Decree affirmed, with costs to appellee.*