60 So.2d 741 (1952)
MUMAW et al.
v.
ROBERSON et al.
Supreme Court of Florida, Special Division B.
October 17, 1952.
Z.D. Giles, Leesburg, and C. Harold Hippler, Eustis, for appellants.
No appearance for appellees.
ROBERTS, Justice.
This is an appeal from a final decree of the Circuit Court in and for Lake County, Florida, directing the appellants to remove a fence and barricade which they had theretofore erected across a street shown as "Sylvan Lake Drive" on a recorded plat of Donna Vista Park, a subdivision in Lake County, Florida, and enjoining and restraining the appellants from obstructing such street in the future and also from interfering with the use by the appellees of an area, delineated upon said plat as "Public Park & *742 Beach," between Sylvan Lake Drive and the waters of Sylvan Lake.
Donna Vista Park is a subdivision of some 80 acres, lying west and south of Sylvan Lake. It is not and has never been within the limits of any municipality. At the time it was platted in 1926  during the waning days of the Florida "land boom,"  it was wild, uncultivated and unimproved woodsland. Ten years later, in 1936, when Mr. and Mrs. Mumaw, appellants here, purchased their property, it was in the same condition. Not a single house had been built in the subdivision, and apparently only three families resided within a radius of one mile of the subdivision. Mr. Mumaw testified that, sometime prior to July 22, 1936, he was approached by the owner, Mrs. Donnie H. Ferrell, who offered to sell him a portion of the subdivided tract as "acreage;" that he agreed to purchase about six acres immediately south of and contiguous to Sylvan Lake; that on July 22, 1936, this acreage was conveyed to him as Blocks Ten and Eleven and Lots One through Eight of Block Fifteen, "according to the plat of Donna Vista Park," but that this description was for convenience only, as shown by a memorandum executed simultaneously by Mrs. Ferrell in which it was stated that "This property is situated in Lake County and is known as formerly Donna Vista Park. The meets (sic) and bounds to be decided later by Survey. As a partial description of this property, the lines of the property sold to F.B. Mumaw as taken from the Blue Print are as follows, starting at Sylvan Lake, running North [should have been south] on Detroit Ave to South Lake Drive, then South to a cement post, then East to a point to be decided by Survey." This memorandum was signed by Mrs. Ferrell and witnessed by the realtor in whose office the transaction was evidently closed. The survey contemplated by this memorandum was never made.
The Mumaws immediately took possession of the tract by building a fence around all three sides of the property and straight down to the shore line of Sylvan Lake. The street shown as "Sylvan Lake Drive" on the plat had not been graded or laid off in any way, and the Mumaws testified that there were no visible signs of a road or trail along the southern boundary of the lake. Shortly thereafter, in September of 1936, the Mumaws sold a portion of their parcel to the appellant Shawn, including a section of the Lake front property, and immediately began the construction of a studio for Mr. Shawn and a residence for themselves. Mr. and Mrs. Mumaw have lived there continuously since that time, and Mr. Shawn has occupied his studio during part of each year. The area in front of their homes was planted with grass and shrubs and a small bathing beach was constructed by Mr. Shawn.
Subsequently, in 1939, Mr. Shawn purchased from Mrs. Ferrell four more blocks of the subdivision adjoining his property on the west, and also lying south of and contiguous to Sylvan Lake, and shown on the plat as being separated therefrom by Sylvan Lake Drive. The plat also showed a strip of land between Sylvan Lake Drive and the Lake marked "Public Park & Beach." Mr. Shawn testified that Mrs. Ferrell intended to convey and he intended to purchase this tract as "acreage," including the portion designated on the plat as Sylvan Lake Drive and as a "Public Park & Beach;" and his deed to this tract describes the property as follows: "All of Blocks Six, Seven, Eight, and Nine (except lot 1 of Block 8) in Donna Vista Park * * * the property herein granted to include areas in all parts of streets within said property and also the lake front and area in Sylvan Lake."
After this additional property was purchased by Mr. Shawn, the fence originally constructed by the Mumaws was extended to take in Mr. Shawn's new property. The fence on the western boundary was built to and, in fact, into the lake. This fence was effectively maintained, the property was posted, and the entrance of the public into the area was obstructed, from September of 1939 until the summer of 1950. At that time, a group of individuals, traveling in several vehicles, cut the fence at the point where Sylvan Lake Drive was shown on the plat at the western boundary of Mr. Shawn's property, and proceeded in an easterly direction along the southern edge of Sylvan Lake, cutting across the lawn in *743 front of the appellants' homes, and breaking up the flagstone path from Mr. Shawn's studio to the lake; they even cut down a tree in front of the Mumaw's home which apparently impeded the progress of the procession. The fence was at once repaired by the appellants and was again repaired after several subsequent removals of the barricade. In August of 1950, the instant suit was filed by the appellees against Mr. and Mrs. Mumaw and Mr. Shawn, the appellants here.
The appellees, except for the appellees Huebner, are owners of lots in the subdivision. None of the appellees acquired title prior to 1947. The appellees Huebner own a parcel of land east of Sylvan Lake and north of the subdivision, which parcel had been conveyed by the Ferrells to one Cleveland in 1924, prior to the subdivision of the 80-acre tract, and which had been expressly excepted from the description of the subdivided tract. Cleveland conveyed to the Huebners in 1950. The complaint contained no special allegations as to the cause of action of the Huebners.
The appellants' motion to dismiss the complaint as to all parties plaintiff, and especially as to the Huebners, was denied; and the cause went to trial on the issues made by the appellants' answers, to wit, (1) adverse possession, (2) estoppel, (3) laches, (4) that the action was barred by the statute of limitations, and (5) that there had not been a complete dedication, including an acceptance, of the street allegedly obstructed by the appellants so as to entitle the appellants  and particularly the Huebners  to maintain the action.
The lower court found, as a matter of fact, that the owners of the property had intended to make an offer of dedication of the public streets and park shown on the plat of Donna Vista Park, but that the offer of dedication was never accepted by any governmental unit or by public user. The evidence amply sustains these findings of fact. The street and park area in question are clearly and unequivocally marked on the plat, and lots were sold with reference to such plat; this is sufficient to constitute an offer of dedication. It is just as clear that this offer was never accepted by the public. While there is some evidence that an old road or trail existed at some time prior to the time when the tract was subdivided, it was shown that no such road or trail existed at the time the appellants came into possession of their property and that trees and shrubs grew along and in that portion of the property designated as "Sylvan Lake Drive." The proof of acceptance by the public of an offer of dedication must be "clear, satisfactory, and unequivocal", Robinson v. Town of Riviera, 157 Fla. 194, 25 So.2d 277. The proof of acceptance failed to meet this test in the instant case, and the Chancellor did not err in holding that there had been no acceptance of the offer of dedication insofar as Sylvan Lake Drive and the park area were concerned.
The rights of the appellees must, then, be determined on the basis of a "private" right, rather than a "public" one. It is generally held that the "private" right of easement implied by a conveyance with reference to a plat or map upon which streets and ways are shown may be barred by adverse possession, Price v. Stratton, 45 Fla. 535, 33 So. 644; City of Miami v. Florida East Coast Ry. Co., 79 Fla. 539, 84 So. 726, 731; Dulany v. Bishoff, 165 Pa. Super. 207, 67 A.2d 600; Lee v. Walker, 234 N.C. 687, 68 S.E.2d 664; Brewer v. Claypool, 223 Iowa 1235, 275 N.W. 34; Louisiana Highway Comm. v. Raxsdale, La. App., 12 So.2d 631; Chenowth Bros. v. Magnolia Petroleum Co., Tex.Civ.App., 129 S.W.2d 446; Harris v. City of South Portland, 118 Me. 356, 108 A. 326; or by estoppel, City of Miami v. Florida East Coast Ry. Co., supra; Douglass v. Belknap Springs Land Co., 76 N.H. 254, 81 A. 1086, 37 L.R.A.,N.S., 953; United Finance Corp. v. Royal Realty Corp., 172 Md. 138, 191 A. 81, 85; Premium Oil Co. v. Cedar City, Utah, 187 P.2d 199; or by laches, Brady v. Farley, Md., 66 A.2d 474.
In the instant case, the Chancellor stated in his opinion that "the question of adverse possession with or without color of title, will be of little importance in arriving at a decision in this case." While the description in the deed from Mrs. Ferrell to the appellant Shawn could have been more perfect, it would appear to be sufficient upon *744 which to base a claim of "color of title" under the provisions of Section 95.16, Florida Statutes, F.S.A. See Mitchell v. Moore, 152 Fla. 843, 13 So.2d 314. And, from what has been said before, it is apparent that the possession of the appellant Shawn was sufficient under the definition of "adverse possession" contained in Section 95.17, Florida Statutes, F.S.A. As to the appellant Shawn, then, the question of adverse possession was of much importance.
On the question of estoppel, the Chancellor held that there could be no recovery based thereon under the decision of this court in Price v. Stratton, supra, in which it was held that "Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no estoppel." While this principle may be applicable under some circumstances, it is not applicable under the facts here existing. The evidence shows conclusively that Mrs. Ferrell intended to convey and the appellants intended to purchase their property up to the shoreline of the lake. Mrs. Ferrell lived for ten years subsequent to the conveyance to the Mumaws and must have observed the building of the studio and home and other improvements made by the appellants on the property. Under such circumstances it would indeed be inequitable for Mrs. Ferrell to contend now that the appellants must open up the street and the park to the public; and, as her grantees, the appellees' rights are no greater than hers, and they should be likewise estopped to so contend. Evans v. Hillsborough County, 135 Fla. 471, 186 So. 193.
As to the appellees Huebner, the Chancellor held that "The evidence I think supports the contention of the plaintiff Huebner that he owns the dominant estate, and is entitled to an outlet over Donna Vista Park, which is the servient estate, along the route of Sylvan Lake Drive as shown on the plat." No such conclusion is warranted either by the pleadings or by the proof in this case. The evidence shows that ingress and egress to and from the Huebner's parcel has been made for many years along a road to the north of the lake, and there is no question here of a way of necessity. A letter dated March 24, 1925, from Mr. Ferrell to Mr. Cleveland, the Huebner's grantor, stating that "I saw Mr. Smith, the owner of the land lying North of you, and he made an arrangement with me to let you out to the Highway along the white fence. So, you can use that at any time from now on. It will be a permanent road. Whenever you get ready to improve the place on east side of the lake, I will make a clayroad joining up to the land you have over there, if I have not already made it." is clearly insufficient as an express grant of an easement.
For the reasons stated, the decree appealed from should be and it is hereby reversed and the cause remanded for further proceedings consistent herewith.
SEBRING, C.J., and THOMAS and MATHEWS, JJ., concur.